UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GABRIEL A.,[1]

                          Plaintiff                    DECISION and ORDER

-vs-

                                        1:24-CV-00389-CJS

COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.
_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("DIB") benefits and Supplemental Security Insurance ("SSI") benefits.  Plaintiff maintains that such determination must be reversed since the Commissioner's decision contains errors of law and is unsupported by substantial evidence, as more specifically set forth below. Now before the Court is Plaintiff's motion for judgment on the pleadings (ECF No. 8) and Defendant's cross-motion for the same relief (ECF No. 11).  For reasons discussed below, Plaintiff's application is denied, Defendant's application is granted, and the matter is dismissed.

_____

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d

---

("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id*.

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec*., No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude*

4

*otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).   "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).   "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on any *post hoc* rationalizations offered by the

Commissioner, but it may consider evidence that was evidently considered by the Administrative Law Judge ("ALJ") even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*.[; [s]*ee also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also*, *Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

6

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, which is set forth in the parties' papers.   The Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.

On January 21, 2020, Plaintiff went to his primary care physician for an annual physical, and complained of some depression, but indicated that his general health was "excellent." Tr. 473 ("General health stated as excellent.").   Plaintiff appeared healthy and walked unassisted with a normal gait. Tr. 476 ("Walks with a normal gait.").

On February 24, 2020, Plaintiff went to his primary care physician complaining of bilateral knee pain, "rated as mild in severity with activity." Tr. 469.   The office note reported that Plaintiff's medical history included "right sided sciatica" and "osteoarthritis of knee." Tr. 469.   Upon examination, Plaintiff had full strength in the upper and lower extremities, and "no instability bilaterally" in the lower extremities. Tr. 471.

On March 24, 2020, Plaintiff returned to his primary care physician, claiming that he felt well and was "working to improve [his] exercise routine." Tr. 465.   Plaintiff walked with a normal gait. Tr. 466 ("Walks with a normal gait.").

On August 17, 2020, Plaintiff applied for DIB and SSI benefits, claiming to be disabled due to "swollen knees, osteoarthritis in both knees," "ride side sciatica," "generalized anxiety," "hypertension," "hernia," "atopic dermatitis," "hearing loss," and "sleep apnea." Tr. 343.   In connection therewith, Plaintiff completed a functional report, in which he stated that he used a cane, which had not been prescribed by a doctor. Tr. 358, 367.   Specifically, Plaintiff stated that he used the cane for walking "long distances,"

and that he began using it approximately six months before he applied for benefits. Tr. 371 ([Question:] "Under what conditions are you to use the cane (daily walking, long distance, household, etc.)? [Answer:] Long Distance.").

On October 7, 2020, the Commissioner had Plaintiff undergo a consultative Internal Medicine Examination by physician John Schwab, D.O. ("Schwab"). Tr. 505-508). Schwab noted that Plaintiff claimed to have arthritis in both knees, and to be able to "walk about two blocks." Tr. 505. Regarding Plaintiff's ability to ambulate, Schwab stated:

> Gait limping without a cane; normal with a cane. Unable to walk on toes; could walk on heels. Stopped the squat at 20%. Stance normal. *He uses a cane for pain when he is outdoors that is self-prescribed. In my opinion, it is necessary*.

Tr. 506 (emphasis added). Upon examination, Schwab found that Plaintiff had full range of motion in all joints, stable joints, and full strength in upper and lower extremities. Tr. 507. Schwab further noted that an x-ray of Plaintiff's right knee showed only "mild osteoarthritic changes." Tr. 507, 509. Schwab's medical source statement was, in its entirety, as follows: "He has a marked restriction in bending forward and lifting heavy objects. He has a mild restriction to prolonged walking and climbing stairs and ladders." Tr. 508.

The Commissioner also had Plaintiff undergo a consultative psychiatric evaluation by psychologist Todd Deneen, Psy.D. ("Deneen"). Tr. 512. Plaintiff reportedly told Deneen, *inter alia*, that he "spen[t] most days in bed watching tv," but that he "sometimes d[id] walk to the supermarket." Tr. 514.

On October 29, 2020, Plaintiff returned to his primary care physician, complaining of increased knee pain, "rated as mild in severity." Tr. 541.   Upon examination, Plaintiff had "bilateral knee pain limited [range of movement] ROM." Tr. 543.

On December 2, 2020, Plaintiff returned to his primary care physician, complaining of back pain. Tr. 538.   The physician recommended that Plaintiff engage in regular exercise. Tr. 539.

On March 3, 2021, Plaintiff's primary care physician issued a letter "to whom it may concern," apparently in connection with Plaintiff's disability application, listing Plaintiff's medical problems as "sleep apnea, back herniated disc disease, knee pain, hypertension, anxiety, moderate persistent asthma, acute bronchitis, atopic dermatitis, tobacco user, moderate recurrent depression, chronic obstructive lung disease." Tr. 625.   Office notes from an annual physical examination performed that same day include notations that Plaintiff "appear[ed] healthy" and "walk[ed] with a normal gait," but had moderately limited spinal range of movement due to pain.   Tr. 661-662.

On August 30, 2021, Plaintiff went to a different physician, complaining of epigastric abdominal pain. Tr. 723. Plaintiff reportedly denied having any back pain or joint pain. Tr. 724 ("Subjective[:] Musculoskeletal: No joint or back pain or muscle problems.").

On November 7, 2022, Plaintiff went to his primary care physician and indicated that he was having leg pain that increased with walking, but which went away after resting. Tr. 753.   Upon examination, Plaintiff had full strength, full range of motion, and "no instability bilaterally" in the lower extremities. Tr. 755.

Beginning in or about January 2021, Tr. 716, many of Plaintiff's treatment notes include "cane" as one of his "current medications." *See, e.g.*, Tr. 658, 741, 757, 762, 767, 773, 778, 781, 786, 789, 792, 797, 804, 811, 818, 825.   In this regard, most of the treatment notes include a section entitled "med current," for use by the physician to list the various medications/treatments which Plaintiff was then using, some of which appear to have been by prescription only, and some of which appear to have been over-the-counter, such as aspirin and ibuprofen. *See, e.g.,* Tr. 658.

Although, none of the above-referenced treatment notes indicate that any treatment provider observed Plaintiff using a cane or other hand-held assistive device to ambulate during an office visit.   Rather, the treatment notes consistently list "glasses" as Plaintiff's only "assistive device." *See, e.g.,* Tr. 469, 538, 625, 754 (listing "glasses" as Plaintiff's only "assistive device").

The Commissioner denied Plaintiff's claims initially and on reconsideration, and in connection with those decisions, agency review physicians found that Plaintiff's spinal disc problems and knee arthritis condition were "severe," but that he was still capable of work at the light exertional level with postural limitations. *See, e.g.,*Tr. 74, 79-83, 89, 109, 128-134.   As part of these determinations, the review physicians acknowledged that Schwab had indicated that Plaintiff's self-prescribed cane was "medically necessary," Tr. 80, but nevertheless found that Plaintiff, who admitted to be able to walk for up to thirty minutes at a time, Tr. 367, was capable of standing and/or walking for "about 6 hours in an 8-hour workday" without a cane. Tr. 93.   In this regard, the review physicians noted that imaging showed some degenerative changes in the spine and knees, but that

physical examination results nevertheless showed full strength in the upper and lower extremities, and full range of movement of the musculoskeletal system. *See, e.g.*, Tr. 114-115.

On October 6, 2022, a hearing was conducted before an ALJ, at which Plaintiff, represented by counsel, and a VE, testified.   Plaintiff submitted no opinion evidence, which, according to Plaintiff's counsel, was because Plaintiff's treating physicians had declined to provide any. Tr. 49.   Counsel, though, agreed that the record was complete, except for some additional treatment records, which he submitted after the hearing with the ALJ's permission. Tr. 46-47.   During the hearing, Plaintiff's counsel did not attempt to elicit any testimony from Plaintiff about his use a cane, nor did Plaintiff, when asked questions about his ability to walk, stand, and climb stairs, indicate that he needed a cane. Plaintiff stated, rather, that he could stand for fifteen or twenty minutes, and could walk about 200 feet, before his legs began to hurt him, and that he needed to use a handrail when climbing stairs. Tr. 55-56.

On March 30, 2023, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI benefits. Tr. 15-27.   The ALJ found, in pertinent part, that Plaintiff had severe impairments including "lumbar disc disease," "thoracic disc disease," and "arthritis of the knees." ECF No. 18.   Then, at the pertinent phase of the sequential evaluation, and taking into consideration Plaintiff's various impairments, the ALJ found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally, and sit,

stand, or walk six hours in an eight-hour day. The claimant can never climb ladders, ropes, or scaffolds, never crawl, and occasionally climb ramps or stairs. He can also occasionally balance, stoop, kneel, and crouch. In addition, the claimant can perform jobs in which communication in English is not required as a function of the job.   He should have no concentrated exposure to pulmonary irritants such as odors, fumes, dust, gases, and poor ventilation. The claimant cannot perform a job that requires driving a motor vehicle. Furthermore, the claimant is limited to performing work that involves simple and routine tasks that can be learned after a short demonstration or within 30 days (based on the claimant's educational level and lack of English proficiency).

Tr. 22.

In making this determination, the ALJ referenced Plaintiff's subjective complaints, including that his "lower and mid back pain" and "knee pain" were so severe that he needed his wife's assistance to get dressed and to perform activities of daily living such as shopping:

He alleges that he suffers from lower and mid back pain [and] knee pain[.] The claimant states that he is unable to sit, stand, or walk for extended period[s, and that he] experiences numbness in the lower extremities [and] pain at various sites in his body at a level of 9/10.   He further noted that he relies on his wife to assist him with putting on his shoes and socks and [with] other day-to-day activities such as grocery shopping.

Tr. 22.

However, the ALJ found that those complaints were not entirely supported by the record.   For example, regarding Plaintiff's back pain, the ALJ noted that MRI studies showed degenerative changes in the lumbar and thoracic spines, but that Plaintiff's physical examination findings were generally normal and/or unremarkable, except for some limited range of motion in the spine. *See, e.g.*, Tr. 23 ("[H]e showed no instability in

the lower extremities bilaterally and otherwise had an unremarkable physical evaluation."). Similarly, regarding Plaintiff's pain from knee arthritis, the ALJ observed that x-rays showed only mild degenerative changes, for which Plaintiff had pursued only "mild and intermittent" treatment. Tr. 24.

As for the medical opinion evidence concerning Plaintiff's ability to ambulate, the ALJ noted that Schwab had opined, in part, that Plaintiff's cane was "medically necessary." In particular, as mentioned earlier, Plaintiff reportedly told Schwab that he used a "self-prescribed" cane "for pain when he is outdoors," and Schwab remarked that, "In my opinion, it is necessary." Tr. 506. The ALJ noted, however, that during Schwab's examination, Plaintiff

> showed range of motion deficits of the spine, but demonstrated a full range of motion of the remaining joints, negative bilateral straight leg testing, and full muscle strength in the upper and lower extremities. Moreover, the claimant showed no signs of sensory deficits as well as no evidence of muscle atrophy, cyanosis, or edema.

Tr. 24. The ALJ observed that, according to Schwab, Plaintiff had "a marked restriction bending forward and lifting heavy objects, and a mild restriction engaging in prolonged walking and climbing stairs and ladders." Tr. 24. However, the ALJ found Schwab's opinion unpersuasive, stating in pertinent part:

> I do not find this opinion persuasive as it is not adequately supported by the medical record or Dr. Schwab's own physical examination, which indicates that the claimant showed intact muscle strength and sensation throughout the body. Moreover, despite his claim that the claimant requires a cane, Dr. Schwab noted that this was self-prescribed by the claimant. Although the medical record indicates that the claimant relied on a cane in some examinations, there [is] little indication that this was prescribed by a treating

13

physician (14F, pg. 27).[6]    In addition, as indicated above, some evaluations indicate that the claimant showed a normal gait. Furthermore, as explained below, Dr. Schwab's opinion is inconsistent with the findings of DDS medical consultants.

Following a review of the medical record in November 2020, Dr. D. Miller, DO, opined that in addition to various postural limitations, the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally, and sit, stand, and walk six hours in an eight-hour day (1A, 2A). This opinion was affirmed upon reconsideration by Dr. C. Krist, DO, in February 2021 (7A, 8A). I find these opinions persuasive. Although the medical consultants in question did not have an opportunity to examine the claimant or review the full record, their opinions are consistent with the totality of evidence (including diagnostic studies and clinical examinations referenced above) and account for the claimant subjective allegations.

Tr. 24-25.

The ALJ went on, at the final steps of the sequential evaluation, to find that with this RFC, Plaintiff could not perform any past work, but could perform other work, and was therefore not disabled. Tr. 25-26.   In this regard, in response to a hypothetical question from the ALJ concerning a claimant who could, among other things, "stand or walk for up to six hours in an eight-hour day," the VE identified several jobs at the light exertional level. Tr. 61-62.   Later, in response to another hypothetical from the ALJ concerning a claimant who could, among other things, "stand or walk" for up to only two hours in eight-hour workday, the VE identified only sedentary jobs. Tr. 63.   The ALJ did not ask, in any of his hypothetical questions, for the VE to consider a claimant who needed a cane to ambulate.

---

[6] This citation is to a list of Plaintiff's "current medications," which includes a "cane." Tr. 658.   However, the Court itself does not recall seeing any treatment notes referring to Plaintiff actually using a cane during an office visit or examination, and neither the ALJ nor the parties have cited to any such evidence.

Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, thereby making the ALJ's decision the Commissioner's final decision. Tr. 1.

In this action, Plaintiff maintains that such decision is unsupported by substantial evidence, since "[t]he ALJ did not properly consider Plaintiff's need for a cane, and in doing so the decision also failed to build a logical bridge between the evidence and the RFC [finding]." ECF No. 8-1.   More specifically, Plaintiff states:

> The RFC was not supported by substantial evidence because the ALJ failed to evaluate Plaintiff's need for a cane and did not include it in the RFC. The ALJ never evaluated whether the cane was medically necessary and only discussed it in passing. Despite not including a cane there was evidence showing it was medically necessary. The Consultative examiner Dr. Schwab opined that the cane was necessary despite being self-prescribed. Tr. 506. Furthermore, his examination supported this, as Plaintiff's gait was limping without a cane and normal with it. Tr. 506. Plaintiff was also unable to walk on his toes and stopped a squat at 20 percent. Tr. 506. The cane was used for pain when outside. Tr. 506.
> ***
> [The ALJ's discussion of Dr. Schwab's opinion did] not assess whether the cane was medically necessary. Rather, the ALJ considered whether it was prescribed. The ALJ rejected it[, noting] it was self-prescribed. However, "[a] cane need not be prescribed to be considered medically necessary[.]" *Shepard v. Comm'r of Soc. Sec.*, No. 5:16-CV-1347 (ATB), 2017 WL 5508377, at *11 (N.D.N.Y. Nov. 15, 2017). Moreover, the ALJ downplays evidence that Plaintiff used a cane in some examinations as well. As noted above, it is not appropriate to pick and choose evidence to support a particular conclusion. *See Zidanich v. Colvin*, 2016 WL 6275233, at *4.
>
> Next, after this there was no discussion of Plaintiff's cane in the decision, and the ALJ failed to build a logical bridge between the evidence and his conclusion. Moreover, the evidence did support that the cane was necessary. Whether or not it was self-prescribed, it was still listed with Plaintiff's current medications. Tr. 628, 630, 636, 642, 650, 654, 658, 663, 716, 757, 762, 767, 773, 778, 781, 786, 789, 792, 797, 804, 811, 818, 825. Whether it is prescribed or not was not relevant, but the evidence suggests

it may have been, but the evidence still supported it was needed. *See Shepard*, 2017 WL 5508377, at *12 (N.D.N.Y. Nov. 15, 2017) (noting that treatment note "implie[d] that there may be a prescription for a cane"). Overall, the evidence in the recorded supported that a cane was medically necessary based on the treatment note and consultative examination. The ALJ failed to explain this, and to the extent he did he relied on selectively chosen evidence. This left the RFC not supported by substantial evidence.

ECF No. 8-1 at pp. 11-12.

Plaintiff alternatively contends that the ALJ failed to develop the record concerning whether he needed a cane to ambulate. ECF No. 8-1 at pp. 12-14.    In particular, Plaintiff states:

Here, there was no further development on whether Plaintiff needed a cane. The ALJ noted the consultative examination and referenced examination in the decision. Tr. 24. However, he did not take any further action to obtain evidence that would answer if this was necessary. In fact, at the hearing, he did not ask Plaintiff any questions about his cane. Tr. 47-59. This is the same as a recent decision in the Southern District of New York, where the Honorable Magistrate Judge Lehrburger ordered remand for the ALJ to seek clarification as to whether the plaintiff used a cane. *See De Camacho v. O'Malley*, No. 22-CV-7779 (RWL), 2024 WL 687286, at *11 (S.D.N.Y. Feb. 20, 2024). There the record included opinions from doctors that Plaintiff used a cane to ambulate, and one opinion said it was medically necessary. *Id*. The ALJ rejected both, finding examination did not support the cane, and there was no evidence in support of it; however, the Court noted there were inconsistencies in the record that the ALJ should have resolved. *Id*.

Here, there were similar inconsistencies that the ALJ failed to resolve. The consultative examination revealed limping gait without a cane and normal gait with the cane. Tr. 506. Meanwhile, treatment records often noted a normal gait, Tr. 662, 687, 784; however, the records do not answer if this was a normal gait with a cane or without it. Notably, Dr. Schwab's examination is the only one that addresses whether Plaintiff used a cane, and that showed abnormal gait when not using it.    At a minimum, this is the

same error that occurred in *De Camacho*. See 2024 WL 687286, at \*11. Moreover, in *De Camacho*, the Court referenced *Diaz v. Saul*, where the same error for inconsistencies regarding a cane required remand. *Id.* (citing No. 19-CV-6394, 2020 WL 13789033, at \*21 (S.D.N.Y. Dec. 30, 2020)). Overall, the ALJ's failure to develop the record left the decision including the RFC not supported by substantial evidence.

ECF No. 8-1 at pp. 1314.

The Commissioner opposes Plaintiff's motion and cross-moves for judgment on the pleadings, contending that Plaintiff's arguments lack merit.   As for Plaintiff's first argument, the Commissioner contends that the ALJ properly evaluated whether Plaintiff needed a cane to ambulate, and that his decision in that regard is supported by substantial evidence. ECF No. 11-1 at pp. 6-8.   In this regard, the Commissioner maintains that Schwab's opinion does not clearly indicate that a cane is medically necessary in general, since, for example, Schwab did not indicate in his "medical source statement" that Plaintiff needed a cane to ambulate.[7]   Defendant further contends that even assuming Schwab indicated that the cane was medically necessary, the ALJ properly relied on substantial contrary evidence when making his RFC finding. *See, e.g.*, ECF No. 11-1 at pp. 6-7 ("With respect to Plaintiff's capacity for standing or walking in particular, the ALJ pointed to various medical findings that supported his RFC finding. For instance, on examination, Plaintiff often exhibited a normal gait, no signs of edema in the lower extremities, and/or no instability in the lower extremities (*see, e.g.*, Tr. 421, 457,

---

[7] See, ECF No. 11-1 at pp. 8-9 ("[I]n the "medical source statement" portion of the report, Dr. Schwab opined that Plaintiff had a marked restriction in his ability to bend forward or lift heavy objects (Tr. 508). Dr. Schwab also stated that Plaintiff had a "mild restriction" in his capacity for prolonged walking, climbing stairs, and climbing ladders (Tr. 508). No limitations concerning the use of a cane were included in the medical source statement portion of the report (Tr. 508).").

466, 471, 476, 483, 496, 501, 548, 559, 568, 573, 615, 635, 640, 662, 682, 755).    And, as the ALJ noted, the most recent images of Plaintiff's knees revealed only mild osteoarthritic changes (Tr. 507). Further, Plaintiff has displayed full range of motion of the hips, knees, and ankles bilaterally (Tr. 507)."); *see also, id*. at p. 9 ("Even assuming for the sake of argument that the cane was medically necessary, the findings on objective examination discussed above illustrate that it was not physically necessary.    That is, at various examinations, Plaintiff exhibited normal gait, no signs of edema in the lower extremities, and/or no instability in the lower extremities.").

As for Plaintiff's second argument, the Commissioner maintains that the ALJ was not required to develop the record, since he already had a complete medical history and there were no obvious gaps in the record.    In this regard, Defendant notes that Plaintiff's counsel indicated that the record was complete except for certain records, which he later submitted, after the ALJ left the record open for that purpose, following the hearing. See, ECF No. 11-1 at p. 11 ("Because Plaintiff asked for additional time to submit records he said were outstanding at the time of hearing, the ALJ granted additional time, and Plaintiff ultimately submitted these records and no others, he cannot now claim that the ALJ did not fully develop the record.") (citing *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005).").    Defendant further maintains that a duty to develop the record did not arise simply because there was conflicting evidence in the record concerning Plaintiff's need to use a cane.

Defendant also urges the Court to reject Plaintiff's argument, that a gap existed, since it was possible that the treatment providers who found that Plaintiff's gait was

18

normal simply forgot to mention that he had used a cane:

> Plaintiff concedes that treatment records often showed that Plaintiff had a normal gait. Pl.'s Br. at 14. However, Plaintiff remarks that "the records do not answer if this was a normal gait with a cane or without it." Pl.'s Br. at 15. This argument is unconvincing. It is not clear why any provider would omit reference to a cane when assessing his gait if he were in fact using one at the examination. The logical conclusion is that these findings were observed when Plaintiff was not using a cane. Indeed, as noted, on various occasions, providers listed glasses as the only assistive device Plaintiff used (*see, e.g.*, Tr. 469, 625, 755).

ECF No. 11-1 at pp. 12-13.

The Court has carefully considered the parties' submissions, including Plaintiff's reply brief, ECF No. 12.

## DISCUSSION

### The ALJ Had No Duty to Develop the Record Further

Plaintiff's failure-to-develop-the-record argument is the second, alternative argument raised in his papers, but the Court addresses it first, since "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Accordingly, the Court first considers Plaintiff's contention that the ALJ failed to develop the record. *See, Lopez v. Comm'r of Soc. Sec.*, 622 F. App'x 59, 60 (2d Cir. 2015) ("Before assessing whether the ALJ's determination was supported by substantial evidence, we must first be satisfied that the claimant has had a full hearing. Whether dealing with a *pro se* claimant or one represented by counsel, the ALJ must develop the claimant's complete medical history.") (citations and internal quotation marks omitted).

Plaintiff essentially contends that the ALJ had a duty to further develop the record in this case, since there was conflicting evidence about whether he needed a cane to ambulate.   In this regard, Plaintiff admits that while Schwab reported that Plaintiff limped without a cane, several treatment providers reported that Plaintiff walked with a normal gait.   Plaintiff nevertheless argues that the ALJ should have explored whether those treatment providers meant that he had a normal gait *with a cane*.   That is, whether the treatment providers simply failed to mention that Plaintiff had been using a cane during the examinations.   As proof that this may have been the case, Plaintiff notes that "cane" was frequently included on his list of current medications.   Alternatively, Plaintiff argues that the ALJ had a duty to question him at the hearing about his use of the cane to ambulate.

As to these points, the law concerning the ALJ's general duty to develop the record is clear:

> In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C.A. § 423(d)(5)(B) (West 2024).

It is well settled that the ALJ's duty to develop the record applies even when the

claimant is represented:

> "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (alterations and internal quotation marks omitted). The ALJ's duty to develop the record reflects "the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation marks omitted).
>
>              ***
>
> However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted). An ALJ's failure to develop the record warrants remand. *See id*. at 79–80.

*Rivers v. Kijakazi*, No. 21-1935-CV, 2023 WL 2485467, at *1 (2d Cir. Mar. 14, 2023).

      However, while the ALJ's duty in this regard applies even where the claimant is represented by counsel, that duty may be lessened or satisfied where, as in the instant case, the claimant's attorney has assured the ALJ that the record is complete. *See, e.g, Lucius R. v. O'Malley*, No. 3:22-CV-01312-MPS, 2024 WL 1200181, at *15–16 (D. Conn. Jan. 22, 2024) ("[I]t matters that the Plaintiff's counsel informed the SSA that the record was complete. An ALJ's duty to develop the record is not unlimited; he is required only to take all reasonable steps to do so, and he "has taken reasonable steps to complete the medical record when [he] asks the claimant's attorney at a hearing if the medical records ... are complete, and the attorney answers affirmatively." *Jason C. v. Berryhill*, No. 6:17-cv-1106 (TWD), 2019 WL 1409804, at *5 (N.D.N.Y. Mar. 28, 2019) (citing cases).  . . .  In this case, the ALJ held the record open for thirty days after the

hearing, after which Plaintiff's counsel's office called the SSA and advised that, aside from one possible ophthalmology note, "the record [was] complete." The Plaintiff did not identify any of the alleged gaps that he now cites as bases for remand.") (citations omitted); *Melissa I. o/b/o R.J.R.D. v. Comm'r of Soc. Sec.*, 2022 WL 3358138, *4 (W.D.N.Y. 2022) ("Although the ALJ has a duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation"); *Jennifer S. v. Comm'r of Soc. Sec.*, No. 20-CV-782, 2022 WL 42413, at *4–5 (W.D.N.Y. Jan. 5, 2022) ("Plaintiff argues that the record was inadequate because it did not include Ms. Jack's counseling notes. . . . [However, a]t the hearing, the ALJ explicitly asked Plaintiff's counsel if there were "[a]ny documents that are outstanding that should be part of the record?" Plaintiff's counsel stated that they were waiting for a questionnaire from Best Health and treatment records from Kenmore Mercy Hospital.   The attorney did not mention any outstanding treatment records from Best Health or LCSW Jack.   The ALJ then confirmed, "So, it's just a medical source statement and Kenmore?" and Plaintiff's counsel responded affirmatively.   The ALJ held the record open to ensure that those documents could be included.   Although an ALJ has a duty to develop the record, this duty is lessened where, as here, Plaintiff's counsel fails to mention the records at the administrative level.") (citation omitted, collecting cases); *cf.*, *Dejesus Gonzalez v. Comm'r of Soc. Sec.*, No. 16-CV-4612 (BMC), 2017 WL 1051119, at *4 (E.D.N.Y. Mar. 19, 2017) ("It is, again, ironic that the same law firm that represented plaintiff at the hearing is accusing the ALJ of failing to

22

obtain records when counsel at the hearing never alerted the ALJ to any gaps in the record. Plaintiff relies on *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), for the rule that an ALJ must develop the record even if a claimant is represented by counsel. Although that oft-quoted dictum is accurate, I have not seen any case applying that rule to a situation where the alleged gap in the record is a theory of counsel in hindsight, rather than one that should have been reasonably apparent to the ALJ. An ALJ will generally be found to have breached his duty where there were obvious deficiencies in the record. If plaintiff's attorney wanted to come up with a creative theory on how there might be more documents, he needed to have done it before the ALJ, not in a review proceeding.") (citations omitted).

The rulings referenced in the preceding paragraph make sense for a number of reasons.   First, as a matter of fairness and judicial efficiency, counsel, who should be more familiar with the record than anyone, should not be permitted to assert that the record is complete, and then, once an adverse decision has issued, cry foul. Alternatively, even assuming that courts are required to overlook such gamesmanship by counsel due to the non-adversarial nature of the disability inquiry, the rulings nevertheless make practical sense, since if there truly were an "obvious gap" in the records in those cases, one would expect that reasonably competent counsel would have alerted the ALJ to such fact, rather than asserting that the record was complete.

Furthermore, while the duty to develop the record applies where there are obvious gaps in the record, it does not arise merely because there are inconsistencies or disagreements within the record:

> While there is case law suggesting that an ALJ has a duty to develop the
> record where there are "inconsistencies" in a treating physician's records,
> *see Rosa*, 168 F.3d at 79 (quoting *Hartnett v. Apfel*, 21 F.Supp.2d 217,
> 221 (E.D.N.Y.1998)); *Calzada v. Asture*, 753 F.Supp.2d 250, 278
> (S.D.N.Y.2010), we read such cases "as requiring further development of
> the record only where the record was incomplete," *Brown v. Comm'r of
> Soc. Sec.*, 2014 WL 783565, at *17 (S.D.N.Y. Feb. 28, 2014); *accord
> Micheli v. Astrue*, 501 Fed.Appx. 26, 29 (2d Cir.2012) ("The mere fact that
> medical evidence is conflicting or internally inconsistent does not mean
> that an ALJ is required to re-contact a treating physician."); *Vanterpool v.
> Colvin*, 2014 WL 1979925, at *16–17 (S.D.N.Y. May 15, 2014) (ALJ had
> no responsibility to further develop the record even though where there
> were discrepancies between the reports and contemporaneous records of
> the treating physician).

*Puente v. Commissioner of Soc. Sec.*, 130 F.Supp.3d 881, 893 (S.D.N.Y. Sep. 18,

2015); *accord, Elizabeth I. v. Comm'r of Soc. Sec.*, No. 6:23-CV-6658-CJS, 2025 WL

723157, at *9 (W.D.N.Y. Mar. 6, 2025) (collecting cases).

    With these points in mind, the Court here finds that Plaintiff's failure-to-develop-

the-record argument lacks merit, since there were no obvious gaps in the record and the

ALJ had a complete medical history.   Indeed, the record contains evidence concerning

Plaintiff's cane use that is relatively simple and straightforward: Plaintiff indicated, in both

his functional report and during his consultative examination with Schwab, that he used

the cane, which was not prescribed, for walking long distances outdoors. Tr. 371, 506.

    Plaintiff's contention in this action, that additional development of the record was

nevertheless required, since further digging by the ALJ *might* have revealed that he was

actually using a cane on those occasions where treatment providers reported him walking

with a normal gait, lacks merit for at least two reasons: First, it is speculative; and, second,

it is refuted by the record, in which treatment providers repeatedly stated that the only assistive device he used during his office visits were his "glasses."   The Court similarly finds no merit in Plaintiff's contention that further development was required to dispel inconsistencies in the treatment notes.[8]

Nor did the ALJ fail in his duty to develop the record by not asking Plaintiff about his cane.   In this regard, district courts in this Circuit have indicated that,

> [t]he ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity.

*Karen F. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00250 EAW, 2023 WL 3191611, at *6 (W.D.N.Y. May 2, 2023) (quoting *Puckett v. Berryhill*, No. 17 CIV 5392 (GBD)(KHP), 2018 WL 6061206, at *2 (S.D.N.Y. Nov. 20, 2018)).   But, again, the duty to develop the record applies where there is an obvious gap, *see, id.*, and here there was no such gap, since Plaintiff had already indicated how and when he used a cane, and since Plaintiff's counsel, who had assured the ALJ that the record was complete, asked Plaintiff questions at the hearing about his ability to stand and walk, in response to which Plaintiff never mentioned needing a cane. Tr. 55-56.   Nor is there necessarily any inconsistency in this regard, since Plaintiff did not claim, either in his functional reports to the Commissioner or when speaking to Schwab, that he needed a cane to ambulate generally.   Rather, he

---

[8] As already noted, a duty to further develop the record does not arise simply because there is an inconsistency in the evidence, and, in any event, the Court rejects Plaintiff's suggestion that there is necessarily an inconsistency between treatment providers reporting that he walked with a normal gait during an examination, and them including "cane" on his list of current medications, since he himself indicated that he only used the cane when walking long distances outdoors.

indicated that he used a cane, which he obtained on his own without a prescription, specifically when walking "long distances," and "outdoors." *See*, Tr. 371 ([Question:] "Under what conditions are you to use the cane (daily walking, long distance, household, etc.)? [Answer:] Long Distance."); *see also*, Tr. 506 ("He uses a cane for pain when he is outdoors that is self-prescribed.").

Alternatively, the Court finds that any error by the ALJ in failing to directly question Plaintiff further about his use of a cane was harmless, since, even assuming that Plaintiff might have, upon further questioning by the ALJ, testified that he needed to use a cane consistently or at least more frequently than he had previously indicated, it does not seem likely that such testimony would have affected the ALJ's RFC analysis.   This is because, first, any such testimony would have been contrary to Plaintiff's prior statements, and, second, the ALJ already interpreted Plaintiff's claim as being that he essentially unable to walk.   That is, when making his RFC finding, the ALJ listed and considered Plaintiff's subjective complaints, including Plaintiff's contention that he was unable to stand or walk for any extended period:

> He alleges that he suffers from lower and mid back pain [and] knee pain[.] The claimant states that he is unable to sit, stand, or walk for extended period[s, and that he] experiences numbness in the lower extremities [and] pain at various sites in his body at a level of 9/10.   He further noted that he relies on his wife to assist him with putting on his shoes and socks and [with] other day-to-day activities such as grocery shopping.   Furthermore, the claimant indicated that he uses a handrail when climbing stairs[.]

Tr. 22.   However, the ALJ found that those complaints were not entirely supported by the record since, for example, Plaintiff's physical examination findings were generally normal

and/or unremarkable, except for some limited range of motion in the spine, and Plaintiff had pursued only "mild and intermittent" treatment for his knee pain. Tr. 24.

In sum, the Court finds no merit to Plaintiff's argument that reversal is required due to the ALJ's failure to develop the record.

The ALJ Did Not Engage in Cherry Picking of Evidence

Plaintiff further maintains that the ALJ erred, when making his RFC finding, and engaged in impermissible "cherry picking," by failing to acknowledge evidence indicating that Plaintiff needed a cane to ambulate.   In particular, Plaintiff asserts that the ALJ "downplay[ed] evidence that Plaintiff used a cane in some examinations[.]" ECF 8-1 at p. 12.   Plaintiff also implies that the ALJ overlooked evidence suggesting that the cane was prescribed by a doctor. *See, id*. ("Whether it is prescribed or not was not relevant, *but the evidence suggests it may have been*[.]") (emphasis added).   On this latter point, Plaintiff is apparently referring to the fact that "cane" was included as a "current medication" in several of the treatment notes. *Id*.

It is, of course, clear that an ALJ is not permitted to "cherry pick" evidence that supports his RFC finding while ignoring contrary evidence. *See, Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted).

> Cherry-picking can be defined as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-cv-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018). Cherry-picking can "indicate a serious misreading of evidence, failure to comply with the requirement that

> all evidence be taken into account, or both." *Id*. (quoting *Younes v. Colvin*,
> No. 1:14-cv-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015)). But an
> allegation of cherry-picking is "seldom successful because crediting it would
> require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc.
> Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). Indeed, what a claimant may label
> as cherry-picking can often be described "more neutrally as weighing the
> evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

*Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21,

2022).[9]  Certainly, however, remand may be appropriate where a plaintiff demonstrates

that an ALJ engaged in cherry picking or otherwise mischaracterized evidence. *See,

Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) ("Courts frequently remand

an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks

evidence that supports his RFC determination while ignoring other evidence to the

contrary."); *Vanessa N. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00913 EAW, 2024 WL

4131242, at *3 (W.D.N.Y. Sept. 9, 2024) ("Courts frequently remand an ALJ's decision

when it ignores or mischaracterizes medical evidence or cherry-picks evidence that

supports his RFC determination while ignoring other evidence to the contrary.").

Here, the Court finds no merit to Plaintiff's cherry-picking argument.  To begin

with, the Court sees no indication that, as Plaintiff claims, the ALJ "downplay[ed] evidence

---

[9] *See also, Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (Observing that some impairments, such as depression, may have symptoms that wax and wane, and that, "in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.... Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."). When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimizing Dr. Dron's opinion.").

that Plaintiff used a cane in some examinations[.]" ECF 8-1 at p. 12.   Indeed, the Court cannot recall, from its own review of the record, any such reference to Plaintiff using a cane during an examination, nor has Plaintiff cited any such evidence.   However, even if the Court is mistaken on this point, Plaintiff's contention is nevertheless factually incorrect, since the ALJ did, in fact, mention (mistakenly in the Court's view) that Plaintiff had "relied on" a cane "in some examinations." *See*, ALJ's Decision, Tr. 24 ("Although the medical record indicates that the *claimant relied on a cane in some examinations* . . .") (emphasis added).   Accordingly, the ALJ cannot be said to have ignored such alleged evidence.

The Court similarly finds no merit to Plaintiff's contention that the ALJ overlooked or ignored evidence suggesting that the cane was prescribed by a doctor.   Again, in this regard, Plaintiff is apparently relying on the fact that "cane" was included as a "current medication" in several of the treatment notes.   However, such references do not indicate that the cane was prescribed,[10] and, more importantly, Plaintiff expressly told Dr. Schwab that the cane had not been prescribed by a doctor. *See*, Tr. 506 ("He uses a cane for pain when he is outdoors that is self-prescribed.").   Accordingly, this aspect of Plaintiff's motion is also denied.

<u>The ALJ's RFC Finding is Supported by Substantial Evidence</u>

Plaintiff further maintains that the ALJ's RFC finding is not supported by substantial evidence, purportedly, since the ALJ never assessed whether Plaintiff's cane was medically necessary, but, instead, merely determined that the cane was not prescribed.

---

[10] Those same lists included over-the-counter items such as alcohol swabs, aspirin and ibuprofen.

29

Alternatively, Plaintiff contends that the RFC finding is not supported by substantial evidence, since the "evidence demonstrated Plaintiff's cane was medically necessary." ECF No. 8-1 at p. 9.   More particularly, Plaintiff indicates that the ALJ should have made provision for use of cane in the RFC finding, for essentially four reasons: 1) Plaintiff said he needed the cane for walking outside; 2) Schwab reported that Plaintiff limped without the cane; 3) Schwab said the cane was "necessary," in his opinion; and 4) the cane was listed as one of Plaintiff's "current medications" in the treatment notes. ECF No. 8-1 at p. 11.   However, the Court again disagrees.

The Court has already set forth the applicable legal principles concerning the substantial evidence standard, and the principles concerning hand-held assistive devices, such as canes, are similarly clear.   These include the fact that the claimant has the burden of proving that a cane is medically necessary, and that medical necessity is not established simply because a claimant chooses to use a cane:

> "'To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing[.]' " *Black v. Colvin*, No. 3:16-CV-1727 (MPS), 2017 WL 6485687, at *5 (D. Conn. Dec. 19, 2017) (quoting SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996)). A plaintiff bears the burden of proving that a cane is medically necessary. *Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. Sept. 6, 2018).   A cane is not medically necessary simply because a plaintiff uses one or a medical professional observes such use. *Harry B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-227 (ATB), 2021 WL 1198283, at *9 (N.D.N.Y. Mar. 30, 2021); *see also Joey A. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-244, 2022 WL 855584 (SALM), at *13 (D. Conn. Mar. 23, 2022). Once a plaintiff has put forward medical documentation establishing a need for a cane and the circumstances during which one is needed, an ALJ must "incorporate the [plaintiff's] use of the cane into the RFC" or use the medical records to

evaluate whether the plaintiff needs a cane. *Gregory F. v. Comm'r of Soc. Sec.*, No. 19-CV-00481 (LJV), 2020 WL 7166738, at *5 (W.D.N.Y. Dec. 7, 2020).

*Marcus R. v. O'Malley*, No. 3:23-CV-00960 (VDO), 2024 WL 3964927, at *4 (D. Conn. Aug. 28, 2024); *see also, James L. v. Comm'r of Soc. Sec.*, No. 22-CV-0397MWP, 2023 WL 5662790, at *3 (W.D.N.Y. Sept. 1, 2023) ("For a device to be considered "medically required," there must be "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing." SSR 96-9p, 1996 WL 374185 at *7. Additionally, the documentation must describe "the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.*").

On the other hand, where a claimant does not establish medical necessity, an ALJ is not required to account for the claimant's cane in the RFC finding:

> While plaintiff notes that numerous medical records mention her use of a cane, none explain if the cane was medically necessary. . . . The ALJ reviewed plaintiff's treatment records from 2012, and noted that eyeglasses were the only assistive device listed. In addition, the ALJ noted the numerous medical findings, with the exception of Dr. Lorensen's consultative exam, that plaintiff exhibited a normal gait and good balance when walking. Because plaintiff failed to meet her burden, and the ALJ considered the available medical evidence regarding the need for assistive devices in accordance with SSR 96–9p, his conclusion that plaintiff's cane was not medically necessary was supported by substantial evidence. Accordingly, the ALJ's RFC determination that plaintiff could perform light work, and his step 4 and step 5 determinations, did not need to account for plaintiff's use of a cane.

*Allen v. Comm'r of Soc. Sec.*, No. 514CV1576DNHATB, 2016 WL 996381, at *8 (N.D.N.Y. Feb. 22, 2016) (citations omitted), *report and recommendation adopted sub nom. Allen v.*

*Colvin*, No. 514CV1576DNHATB, 2016 WL 1020858 (N.D.N.Y. Mar. 14, 2016).

Here, Plaintiff contends that the ALJ failed to consider whether the cane was medically necessary, and only considered whether it had been prescribed, but the Court disagrees.   Indeed, there was really little question as to whether the cane had been prescribed, since Plaintiff told Schwab that it had *not* been prescribed, and there was no evidence to the contrary.[11]   Rather, the ALJ listed the fact that the cane had not been prescribed as just one of several factors that led him to find that the cane was not medically necessary, contrary to what Schwab had indicated:

> Despite [Schwab's] claim that the claimant *requires a cane*, Dr. Schwab noted that this was self-prescribed by the claimant.   Although the medical record indicates that the claimant relied on a cane in some examinations, there [is] little indication that this was prescribed by a treating physician.   In addition, as indicated above, some evaluations indicate that the claimant showed a normal gait.   Furthermore, as explained below, Dr. Schwab's opinion is inconsistent with the findings of DDS medical consultants.

ALJ's Decision, Tr. 24 (emphasis added).   Consequently, the Court finds no merit to Plaintiff's claim that the ALJ failed to consider whether the cane was medically necessary.

The Court also denies the remainder of Plaintiff's substantial-evidence argument, since it really just expresses a disagreement over how the ALJ weighed the evidence.   In

---

[11] Even assuming that the cane had been prescribed, that alone would not be sufficient to establish that it was medically necessary. *See, Angel P. v. Comm'r of Soc. Sec.*, No. 5:24-CV-00417 (BKS/ML), 2025 WL 2174873, at *6 (N.D.N.Y. June 30, 2025) ("[T]he fact that a cane was prescribed at some point is not dispositive of whether the cane was medically necessary during the relevant period.   Indeed, Plaintiff advised her primary care physician in October 2019 that she did not want to use a cane, and contemporaneous treatment notes reflect a normal gait without any assistive device.   Likewise, the most recent treatment notes do not express any concerns from Plaintiff or her providers regarding balance or gait, or any suggestion that a cane is necessary.") (citations omitted), *report and recommendation adopted sub nom. Angel A.P. v. Comm'r of Soc. Sec.*, No. 5:24-CV-417 (BKS/ML), 2025 WL 2172703 (N.D.N.Y. July 31, 2025).

this regard, Plaintiff argues that the ALJ should have found that the cane was medically necessary based on particular evidence that he cites.   However, the issue, pursuant to the relevant "substantial evidence" legal standard, is not whether there was evidence to support a finding that the cane was medically necessary, but rather, whether, based on the evidence of record, a reasonable factfinder would *have to conclude* that Plaintiff's cane was medically necessary, such that his need for a cane had to be included in the RFC finding. See, e.g., *Schillo v. Kijakazi*, 31 F.4th at 69 ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'—that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").   Plaintiff has not shown that he is entitled to prevail under that standard. That is, Plaintiff has not shown that based on the evidence cited by the ALJ in support of his RFC finding, no reasonable factfinder could have reached the same conclusion.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 8) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 11) for the same relief is granted, and this action is dismissed.   The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
         September 16, 2025

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

33